Filed 2/17/21  Eagle Farms v. Calcot CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EAGLE FARMS, et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CALCOT, LTD.,<br><br>Defendant and Respondent. | F077565<br><br>(Super. Ct. No. S1500CV278617)<br><br>**MODIFICATION OF OPINION ON DENIAL OF REHEARING [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion herein filed on January 25, 2021, be modified as follows:

1. On page 12, following the last sentence of the first paragraph of footnote 3, insert the following additional sentences:

Moreover, an accounting is not an independent cause of action but merely a type of remedy.  (*Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 82, disapproved on other grounds in *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626; see *Janis v. California State Lottery Commission* (1998) 68 Cal.App.4th 824, 833—834 ["A right to an accounting is derivative; it must be based on other claims"].) Thus, we do not ignore plaintiffs' accounting allegations, but instead address them in the context of other issues.

2.  On page 18, following the third sentence of the second full paragraph, insert a paragraph break so that the sentence which begins "Similarly, regarding plaintiffs' assertion …" begins a new paragraph.

3.  On page 19, strike the second full sentence at the top of the page that begins with "Regardless, their assertion regarding …".

4.  On page 19, before the first full paragraph that begins with "Finally, with respect to their contention Calcot …," insert the following new paragraph:

Calcot asserted in its statement of undisputed facts in support of its motion for summary judgment—specifically, in its twenty-second statement of undisputed fact—that its board "made the decisions as to how to treat the losses from the [White Gold] Joint Account and Global Cotton Recovery relating to the write down of property, plant and equipment." To support this assertion, Calcot cited to deposition testimony of three persons—Calcot's CEO, chief financial officer, and Robert Norris—declarations by the CEO and the chief financial officer, and board meeting minutes. The chief financial officer's declaration states, "Calcot decided to charge the losses to the current operating expense[.]" The meeting minutes only state that the issue of loss allocation was discussed. However, none of the evidence plaintiffs proffered in response to Calcot's twenty-second statement of undisputed fact controverts the chief financial officer's declaration assertion. Moreover, the trial court overruled all of plaintiffs' objections to Calcot's evidence offered in support of its twenty-second statement of undisputed fact, which included a declaration that the chief financial officer's declaration statement "does not say what Calcot claims it does." Therefore, as the record stands, it is an undisputed fact in these proceedings that Calcot's board approved an allocation of the White Gold and GCR losses. (Code Civ. Proc., § 437c, subd. (e) [uncontroverted declarations must be accepted as true].)

5.  In the middle of the third sentence of the inserted paragraph on page 19, following "Robert Norris," add as footnote 6 the following footnote:

**6** The record reveals Mr. Norris has served in different capacities at Calcot over the years, including serving as president, senior vice president of finance, and chief manager.

This modification requires the renumbering of all subsequent footnotes.

6.  In the third sentence of the third full paragraph on page 19, which begins, "Additionally, the paltry evidence …," strike the word "paltry."

7.  In the fourth sentence of the third full paragraph on page 19, which begins, "The evidence does not establish a breach …," strike the word "The" and insert "This is because that" in its place.

This modification does not effect a change in the judgment.

2.

The petition for rehearing is denied.

SNAUFFER, J.

WE CONCUR:

POOCHIGIAN, Acting P.J.

SMITH, J.

3.

Filed 1/25/21  Eagle Farms v. Calcot CA5 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EAGLE FARMS, et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>CALCOT, LTD.,<br><br>Defendant and Respondent. | F077565<br><br>(Super. Ct. No. S1500CV278617)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Stephen D. Schuett, Judge.

Law Offices of Ralph B. Wegis, Ralph B. Wegis, Barry E. Rosenberg, Edward Gordon; The Law Firm of Joseph H. Low IV and Joseph H. Low IV for Plaintiffs and Appellants.

Orrick, Herrington & Sutcliffe, William A. Molinski, Kelsi Brown Corkran, Rachel G. Shalev; Griswold, LaSalle, Dowd, Cobb & Gin, Robert M. Dowd and Michael R. Johnson, for Defendant and Respondent.

-ooOoo-

Plaintiffs-appellants are cotton growers, and are former members of defendant-respondent Calcot, Ltd. (Calcot), a California cotton marketing cooperative of over

850 members.  After two of Calcot's business ventures resulted in sizeable losses that in turn resulted in lower payouts to members, plaintiffs filed a direct—as opposed to derivative—lawsuit against Calcot alleging six causes of action for breach of contract, constructive fraud, breach of fiduciary duty, accounting, negligence, and violation of Penal Code section 496.  Calcot moved for summary judgment on multiple grounds, including on the ground that all of plaintiffs' claims are derivative and thus plaintiffs lack standing to bring them on a direct basis.  The trial court granted summary judgment, disposing of the first five causes of action on the sole basis of standing and of the sixth cause of action on the dual basis of lack of standing and that the purported facts underlying the claim fail to support a cause of action under Penal Code section 496.

Plaintiffs contend all six of their causes of action state direct claims, and also contend the facts underlying their claim for violation of Penal Code section 496 do support a cause of action.  We affirm the judgment entered.

## FACTUAL AND PROCEDURAL BACKGROUND

Calcot is a grower-owned cotton marketing cooperative formed under Chapter 1, Division 20 of the California Food & Agricultural Code.[1]  Calcot has over 850 members, and the 23 plaintiffs are former members.[2]  According to its articles of incorporation, Calcot exists to "engage in any activity in connection with the harvesting, grading, handling, processing, storing, warehousing, and marketing of farm products and by-products of the Corporation and of its members, and of non-members to such extent as may be permitted by law and financing any of the above enumerated activities specified

---

[1] All statutory references are to the Food & Agricultural Code.

[2] The 23 plaintiffs are Eagle Farms, Allen Ellis, Clinton Wofford, Cockrill Brothers Farms, Cory Weddle Farms, Cruye & Ellis Blackwater Farms, Stanley Ellis, England Farms, El Fuerte Farms, Mark Gillespie, Ian Gillespie, Timothy and Mary Maher, Mark Poe, JMU Farming, Sierra Farming Partnership II, Skousen Farms, Toby Sullivan, Jamie Shaw, Morning Star Farms, Clayton Golson, M & G Farms, Matthews Ruiz, and Eric Matthews.

herein." Calcot is governed by its articles of incorporation and bylaws as well as applicable California and federal law.

Calcot's members are deemed "shareholders," even though the cooperative is organized without shares of stock. (§ 54040.) Additionally, Chapter 1, Division 20 of the California Food & Agricultural Code applies the General Corporation Law to agricultural marketing cooperatives like Calcot, including the requirement that actions challenging wrongdoing that first harms the corporation and then the shareholders indirectly be brought as derivative actions. (See Corp. Code, § 800.)

Calcot's members pool their individual cotton so that Calcot can sell it as a single entity on the global market. Calcot's stated goal is to "operat[e] as the direct marketing arm of a grower's individual operations, providing first rate service at the lowest possible cost, allowing the grower to keep more of the actual selling price of their cotton, rather than paying a middleman to handle the risk." Members elect other members to represent them on Calcot's board of directors, with each member entitled to one vote.

Calcot enters into a Membership and Marketing Agreement (MMA) with each of its members, which automatically renews each year unless the member expressly signs out between February 1 and February 14 each year. The MMA incorporates Calcot's articles of incorporation and bylaws, and contains the yearly contractual obligations of each member and Calcot. Under the MMA, each member is obligated to deliver to Calcot all of the cotton he or she produces, and in exchange, Calcot is obligated to market the members' cotton.

Pursuant to its bylaws, Calcot may market members' cotton in pools "pursuant to such rules and regulations as the Board may from time to time prescribe." Calcot operated a seasonal pool, a call pool, and a spot fixation pool. Each pool had a different marketing approach and risk profile. The spot fixation pool had the highest risk profile and required "maximum grower participation." Plaintiffs alleged they participated in

3.

only the seasonal and call pools.  Also, according to plaintiffs, the board did not prescribe any rules and regulations for the seasonal pool as required by the bylaws.

In addition to the obligations of the parties, the MMA sets forth how members are to be paid for the proceeds of the sale of cotton, which includes an explanation of how expenses and losses are treated and ultimately borne by the members.  Paragraph 6 of the MMA provides:

> "6.   CALCOT shall market the cotton delivered by the GROWER and there shall be deducted from the proceeds of sales thereof the cost of freight, insurance, storage, and any other expense incurred in handling cotton, including all costs of operating and maintaining CALCOT, together with retains for the Cotton Revolving Fund and other fund or funds as provided for in the Bylaws concerning cotton."

Paragraph 7 of the MMA reads:

> "7.   It is understood and agreed that CALCOT shall market and account for all cotton delivered hereunder separately when there is a difference in value resulting from area of growth, variety, or other conditions.  This provision, however, shall be subject to all other provisions of this Agreement."

The bylaws provide that, subject to certain legal limitations, "all corporate powers shall be exercised by or under the authority of, and the business and affairs of Calcot shall be controlled by the Board and its Executive Committee, in its unlimited discretion."  The bylaws provide the board shall have the power to "commingle funds and use all proceeds from the sales of [cotton]," as well as the power to "charge losses as current operating expenses, carry such losses forward to be charged against future proceeds, charge such losses ratably against future proceeds, or charge such losses ratably against any reserve funds or capital credits."

Further regarding losses, section 11.03 of the bylaws reads in part:  "In the event of a substantial loss to Calcot from any cause whatsoever, the Board may, in its discretion, charge all or any part of such loss to current operating expenses.  Any part of

4.

such loss not charged to current operating expenses (up to the whole thereof) may be charged ratably and proportionately against Revolving Fund Credits (in such Revolving Fund or Funds as the Board shall determine) for any year or years, or at the discretion of the Board, may be charged ratably and proportionately against all credits in any or all Revolving Funds (for all years)." Section 11.03 further provides the board has the power to determine when a "substantial loss" has occurred and how the loss should be treated, and that the board's determination shall be conclusive.

There are at least two ways Calcot can treat losses. First, Calcot can charge losses to its retained earnings, which is equity that Calcot reserves for corporate purposes. Second, the bylaws and the MMA allow Calcot to charge losses as operating expenses. Losses that increase operating expenses reduce Calcot's net earnings, which in turn shrinks the overall pot of proceeds from the sale of cotton available for distribution to all members. These distributions are called "overages," amounts payable to growers beyond the amount Calcot advances when growers first deliver their cotton.

Members only receive overages once the board approves their distribution. It is also the board's task to decide how to allocate overages among the three pools Calcot operates.

### Global Cotton Recovery and White Gold

Calcot's articles of incorporation and bylaws both permit Calcot to manage the cotton of "non-members." Global Cotton Recovery, LLC (GCR) was a wholly owned Calcot subsidiary located in Tennessee formed in 2002; it processed low grade, loose, and damaged cotton for sale. After GCR experienced fire damage to its inventory and equipment and a rogue employee defrauded GCR, Calcot's board decided in 2011 to discontinue GCR's operations and write down GCR's property, plant, and equipment at a loss it charged to Calcot's operating expenses.

In 2007, Calcot's board entered into a joint venture with White Gold Cotton, LLC (White Gold) to market cotton in West Texas. After several years of financial success, a

5.

series of events resulted in losses to the joint venture account exceeding $21 million. As with GCR, Calcot's board decided to charge the joint account's losses to operating expenses.

Because of the increase in operating expenses from these two non-member ventures, Calcot's net earnings were diminished, which caused a diminution in the amount of overages available to all members. These overages were eventually distributed to the grower pools. The members in the call and seasonal pools received lower-than-expected payouts. However, unlike the growers in those two pools, the growers in the spot fixation pool had already received almost all of their money as advances.

### *Third amended complaint*

Plaintiffs filed their third amended complaint, the operative complaint, alleging six causes of action for breach of fiduciary duty, constructive fraud, breach of contract, accounting, negligence, and violation of Penal Code section 496. The complaint alleges Calcot's board acted without authorization when it entered into the White Gold and GCR ventures, which plaintiffs characterized as "risky." Specifically, plaintiffs maintain the White Gold and GCR ventures were not authorized by any of Calcot's governing documents and were also never properly approved by the board of directors. Plaintiffs further alleged Calcot sought to conceal the risk and the ensuing losses from these ventures from plaintiffs and improperly charged these losses to operating expenses. Additionally, plaintiffs averred Calcot concealed serious alleged deficiencies in Calcot's accounting system.

### *Summary judgment granted*

The trial court granted summary judgment on all six causes of action. With respect to the first five causes of action—which excludes the Penal Code section 496 claim—the court granted summary judgment on the sole ground that the plaintiffs'

various claims were derivative in nature and thus the plaintiffs lacked standing to assert them directly.

In its 10-page ruling, the court noted that Calcot applied the GCR and White Gold losses to reduce retained earnings and to operative expenses, and then Calcot charged its members the losses by deducting the prorated share of the losses from sales receipts payable to its members. The court then quoted almost the entirety of bylaws section 11.03 regarding the board's authority to determine the treatment of losses. The court characterized plaintiffs' theory of recovery as follows:

> "Plaintiffs argue that the actions of Calcot in entering into these business dealings with White Gold and [GCR] were not authorized either by law or by the Calcot board of directors. Further, the losses incurred by Calcot and charged to the pools breached a fiduciary duty Calcot owed to its members, constitutes constructive fraud, breached the contract between Calcot and its members, makes Calcot negligent in conducting non-member business and places Calcot in possession of stolen property."

In concluding plaintiffs' first through fifth causes of action are derivative, the court stated:

> "However Plaintiffs characterize the events that led to the current lawsuit, the gravamen of their complaint was harm to Calcot that resulted in losses which were realized by the members through increased operating expenses. They allege the actions of Calcot in entering into business dealings with White Gold and [GCR] were not authorized either by law or by the Calcot board of directors and the resultant losses reduced corporate assets and increased operating expenses. Those increased operating expenses were then passed on to the member/shareholders. These damages to Plaintiffs are incidental to any injury to Calcot resulting from the failed business ventures with White Gold and [GCR]."

The trial court also rejected what it characterized as plaintiffs' "attempt to transform a derivative action into a direct action by alleging that Calcot's breach of the

7.

MMA is a direct breach of contract." In support, the court cited *Mielui v. DeBartolo* (N.D. Cal. 2001) 2001 WL 777091 at *15 (*Mielui*) for the proposition that claims are derivative "even if they are based on a contractual right, if it is the corporation," or in this case, the cooperative, that is injured first.

Regarding the sixth cause of action for violation of Penal Code section 496, the court ruled the underlying facts supporting the claim were no different than for the other causes of action and were thus derivative in nature, and additionally ruled these facts failed to support a cause of action under Penal Code section 496. Specifically, the court ruled that plaintiffs' cotton did not already have the character of having been stolen at the time it came into Calcot's possession as required to maintain an action under Penal Code section 496. As such, the court reached the merits of the sixth cause of action, whereas it disposed of the first five causes of action on the basis of standing.

After judgment was entered and the trial court denied plaintiffs' motion for a new trial, plaintiffs filed a timely notice of appeal.

## DISCUSSION

Plaintiffs contend the trial court erred in granting summary judgment. They contend all of their causes of action state direct claims, and specifically regarding the sixth cause of action for violation of Penal Code section 496, the underlying facts stated a cause of action. As we will demonstrate, plaintiffs' theories of recovery all stem from a claim of mismanagement that harmed Calcot first, and as such all their claims are derivative. Notwithstanding, and independent of the derivative nature of their claims, the factual assertions underlying plaintiffs' various theories of recovery lack evidentiary support and therefore plaintiffs are unable to advance any of their causes of action. We affirm the judgment on these alternative bases.

## I.      Summary judgment law and standard of review

" 'Summary judgment is appropriate only if the evidence shows there is no triable issue of any material fact, and that the moving party is entitled to judgment as a matter of

8.

law.  The trial court's obligation in ruling on a summary judgment motion is to determine whether issues of fact exist, not to decide the merits of the issues themselves.  When making that determination, the trial court must strictly construe the affidavits of the moving party, and liberally construe those of the opponent....' [¶] ... We independently review the record to determine whether the moving party is entitled to judgment as a matter of law." (*Schwoerer v. Union Oil Co.* (1993) 14 Cal.App.4th 103, 110.)  "[W]e review the trial court's order, not its reasoning, and affirm an order if it is correct on any theory apparent from the record." *(Blue Chip Enterprises, Inc. v. Brentwood Sav. & Loan Assn.* (1977) 71 Cal.App.3d 706, 712.)

Neither party can rely on its own pleadings as evidence to support or oppose a motion for summary judgment or summary adjudication.  (See *College Hospital, Inc. v. Superior Court (Crowell)* (1994) 8 Cal.4th 704, 720, fn. 7 (*Crowell*); *Roman v. BRE Properties, Inc.* (2015) 237 Cal.App.4th 1040, 1054 (*BRE Properties*).)  Code of Civil Procedure section 437c, subdivision (b)(1) requires the moving party to demonstrate the presence or absence of a genuine triable issue by "affidavits, declarations, admissions" or other admissible evidence.  (*Crowell,* at p. 720.)  A defendant's motion for summary judgment or summary adjudication "necessarily includes a test of the sufficiency of the complaint" and its legal effect is the same as a demurrer or motion for judgment on the pleadings.  (See *American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1117—1118; *Prue v. Brady Co./San Diego, Inc.* (2015) 242 Cal.App.4th 1367, 1375—1376.)  Additionally, "[e]ven when our review on appeal 'is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief.  [Citations.]  Issues not raised in an appellant's brief are deemed waived or abandoned.' " (*State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 836.)

## II.     Basic law on shareholder derivative actions

Under California law, an agricultural marketing cooperative is a corporation, albeit of a special type. A cooperative may be formed without shareholders, as was Calcot, in which case its members are deemed to be shareholders for purposes of the General Corporation Law, Corporations Code section 100 et seq. The cooperative itself has all rights and powers of a corporation and is subject to the General Corporation Law except where provisions of that law "are in conflict with or inconsistent with the express provisions" of the nonprofit cooperative associations law, sections 54001 to 54294. (§ 54040.)

Under California corporation law, a shareholder cannot bring a direct action for damages to the shareholder on a claim that wrongdoing by management injured the corporation. (*Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 312 (*Schuster*).) The corporation itself must bring such an action or, in some circumstances, the shareholders may sue on the corporation's behalf. (*Ibid.*) "In light of the directors' role in the operation of the business affairs of the corporation, where conduct, including mismanagement by corporate officers, causes damage to the corporation, it is the entity that must bring suit; the individual shareholder may not bring an action for indirect personal losses (i.e., decrease in stock value) sustained as a result of the overall harm to the entity." (*Bader v. Anderson* (2009) 179 Cal.App.4th 775, 788 (*Bader*).)

If the board of directors of a corporation refuses to act to redress injuries to the corporation, a shareholder may, on certain conditions (see Corp. Code, § 800), sue on behalf of the corporation. Such an action commonly is referred to as a shareholders derivative action. "A derivative lawsuit is in essence a consolidation in equity of two suits, one by the shareholder against the directors seeking an order that they sue those who have wronged the corporation, and the other by the corporation against the wrongdoers." (*Bader, supra,* 179 Cal.App.4th at p. 789.)

"A shareholder's derivative suit seeks to recover for the benefit of the corporation and its whole body of shareholders when injury is caused to the corporation that may not

otherwise be redressed because of failure of the corporation to act.  Thus, 'the action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' ... 'The stockholder's individual suit, on the other hand, is a suit to enforce a right against the corporation which the stockholder possesses as an individual.' " (*Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106–107 (*Jones*); *PacLink Communications Intern., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 964 (*PacLink*); *Smith v. Tele–Communication, Inc.* (1982) 134 Cal.App.3d 338, 343–345.)

"Shareholders may bring a derivative suit to, for example, enjoin or recover damages for breaches of fiduciary duty directors and officers owe the corporation....  An individual cause of action exists only if damages to the shareholders were not *incidental* to damages to the corporation.  (*Jones, supra,* [1 Cal. 3d.] at p. 107.) "Examples of direct shareholder actions include suits brought to compel the declaration of a dividend, or the payment of lawfully declared or mandatory dividends, or to enjoin a threatened ultra vires act or enforce shareholder voting rights." (*Schuster, supra,* 127 Cal.App.4th at p. 313; see also *Avikian v. WTC Financial Corp.* (2002) 98 Cal.App.4th 1108, 1116 [shareholders alleged the defendant officers and directors looted corporate assets and entered into self-serving deals to sell assets to third parties; claims held to be derivative in nature and properly dismissed].)

## III.    Analysis

### A.    Insufficient factual support

We first discuss how each theory of recovery plaintiffs have advanced in their appellate briefing lacks evidentiary support in the record and thus fails irrespective of the derivative nature of the lawsuit.  (See *Crowell, supra,* 8 Cal.4th at p. 720; *BRE*

11.

*Properties, supra,* 237 Cal.App.4th at p. 1054.) We will discuss each cause of action in turn in the order plaintiffs have addressed them in their opening brief..**[3]**

### 1.    *Breach of contract cause of action*

The elements of a cause of action for breach of contract are: " '(1) existence of [a] contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach.' " (*Miles v. Deutsche Bank National Trust Company* (2015) 236 Cal.App.4th 394, 402.) In their opening brief, plaintiffs contend their "breach of contract claim alleges that Calcot breached the MMA by failing to abide by the contractual terms that '[i]t is understood and agreed that Calcot shall market and account for all cotton delivered [under the MMA] separately whenever there is a difference in value.' " Paragraph 7 of the MMA is apparently the contractual term plaintiffs are referencing here.

Additionally, plaintiffs contend Calcot took "deductions beyond those allowed by paragraph 6 of the MMA and fail[ed] to account for such deductions." Furthermore, they assert: "Calcot had an obligation to report financial information (AA 988) in a manner understandable by growers. (AA 764:20—765:12 [Wang deposition]; AA 1956:23—1957:3 [Bush deposition].) Calcot could not do this. In particular, Calcot failed to prove that each item of cost deducted was incurred in handling cotton delivered by growers.

---

**[3]** We will not address either the accounting or negligence causes of action. The accounting cause of action was pleaded in the complaint not as a standalone cause of action, but as solely a remedy for the breach of fiduciary duty and constructive fraud causes of action. (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493 [the pleadings delimit the scope of the issues in a motion for summary judgment].)

Plaintiffs have also forfeited any argument regarding their negligence cause of action because they have failed to brief it. The negligence claim is mentioned in the opening brief only when plaintiffs list the causes of action they included in their complaint. (*Maxim Crane Works, L.P. v. Tilbury Constructors* (2012) 208 Cal.App.4th 286, 295, fn.7 [a contention not separately headed and argued in the opening brief will not be considered by appellate court].)

(AA 778:13—779:1 [Wang deposition].) This was contrary to paragraphs 6—7 of the MMA."**4** Plaintiffs have failed to cite to evidence in the record demonstrating a breach of the MMA.

We first observe plaintiffs' misquoting of paragraph 7 of the MMA. That paragraph does not require Calcot to account for all cotton separately whenever there is any difference in value, but rather only "when there is a difference in value resulting from area of growth, variety, or other conditions." Plaintiffs cite to no evidence in the record demonstrating there was ever a difference in the value of cotton owing to such a condition, and therefore we do not see how plaintiffs can advance their cause of action for breach of contract based on an alleged violation of paragraph 7.

We turn next to plaintiffs' theory regarding an alleged violation of paragraph 6 of the MMA. First, plaintiffs do not specify, or cite to the record regarding, what deductions Calcot allegedly took "beyond those allowed by paragraph 6." Paragraph 6 contains a very broad list of categories of deductions that can be made from proceeds of sales of cotton, and Calcot does not indicate what deductions were made that do not fit into one of the listed categories. Second, plaintiffs do not cite to any facts regarding how Calcot could not and did not "report financial information in a manner understandable by growers." Third, Calcot had no obligation "to prove that each item of cost deducted was incurred in handling cotton delivered by growers." Paragraph 6 of the MMA provides there *shall* be deducted from the proceeds of sales of cotton "all costs of operating and maintaining Calcot," which would surely include the costs associated with operating any of Calcot's non-member business engagements, including the White Gold and GCR engagements.

---

**4** "AA" is an abbreviation for the appellants' appendix on appeal. We included the record citations in our quoting from plaintiffs' opening brief to show plaintiffs' record citation omissions.

13.

As with the constructive fraud cause of action, even if the injuries plaintiffs allegedly suffered under the breach of contract theories they advance here on appeal were direct, the relevant undisputed facts show these theories cannot succeed.

### 2. *Constructive fraud cause of action*

Constructive fraud consists of:

> "1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or,
>
> "2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud." (Civ. Code, § 1573.)

Plaintiffs argue Calcot owed them the fiduciary duty that an agent owes to his or her principal. Plaintiffs quote liberally from *Michel v. Moore & Associates, Inc.* (2007) 156 Cal.App.4th 756, 763:

> "Constructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship. [A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent. Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud."

Specifically, plaintiffs contend Calcot breached their fiduciary duty to plaintiffs by "conceal[ing] material facts about the nature of Calcot's business activities and accounting system in inducing Plaintiffs to sign on with Calcot and continue to transfer title to their bales of cotton to Calcot." Plaintiffs assert "Calcot's concealment of material facts while acting as a fiduciary was fraud."

14.

To parse it out, plaintiffs contend in their brief that Calcot breached its fiduciary duty to plaintiffs in two ways: (1) by concealing material facts about the nature of Calcot's business activities, and (2) by concealing material facts about the nature of Calcot's accounting system. In turn, plaintiffs contend each of these breaches played a meaningful part in inducing plaintiffs to join Calcot or remain as members.

### a. Facts regarding business activities

There are several fatal problems with plaintiffs' argument. First, plaintiffs do not specify what "material facts about the nature of Calcot's business activities" they are referring to, and do not provide any record citations. This lack of factual analysis is sufficient by itself to reject their constructive fraud argument. (Cal. Rules of Court, rule 8.204(a)(1)(B); see *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [to be considered, a contention on appeal must be supported with authority or analysis].) Nevertheless, even were we to assume plaintiffs are generally referring to activities regarding White Gold and GCR, we cannot speculate what specific facts regarding these activities would give rise to a constructive fraud claim.

### b. Facts regarding accounting system

Additionally, plaintiffs' contention Calcot concealed facts about the nature of Calcot's accounting system appears to be based primarily on a purported 2006 memorandum drafted by Calcot's accountants (the "2006 memo"). Plaintiffs claim "Calcot was told [in 2006] by its accountants that its accounting system was deficient, and 'may cause earnings to be misallocated to the pools or misstated in total' and could not detect fraud." Plaintiffs state "Calcot took no corrective action" in response to the 2006 memo. Additionally, quoting from the deposition testimony of Calcot's chief financial officer, plaintiffs claim Calcot admitted that it "cannot tell the grower proceeds by pools, proceeds by bale, or proceeds by grower." Plaintiffs further assert, based on the chief financial officer's testimony, Calcot could not provide "the sales proceeds received by Calcot's seasonal, call or spot fixation pools."

15.

Plaintiffs ultimately contend that had these concealed facts regarding the accounting system been disclosed, they would not have "joined or delivered cotton to Calcot." To support this particular contention in their brief, plaintiffs cite to the declarations that all plaintiffs submitted in support of their two "Supplemental Brief[s] to Augment Evidence" which were filed in support of their opposition to the motion for summary judgment. However, the trial court refused to consider these supplemental briefs on the ground they were not timely filed. We question why plaintiffs would cite to the declarations that formed the evidentiary basis of the rejected supplemental briefs, which were filed concurrently with the briefs; the trial court did not admit the declarations into evidence.

We first address the 2006 memo and then the chief financial officer's testimony. As previously mentioned, the trial court sustained Calcot's objection to the 2006 memo on the grounds of hearsay, lack of authentication, lack of foundation, and the rule of completeness. Plaintiffs contend the trial court improperly sustained the objection to the 2006 memo. Specifically, they contend the memo was part of Calcot's 2009 audit report and hence a business record. We disagree.

Even though the trial court gave four reasons for excluding the 2006 memo, we need but one reason in order to affirm the trial court's ruling. (*Philip Chang & Sons Associates v. La Casa Novato* (1986) 177 Cal.App.3d 159, 173.) The 2006 memo was hearsay, and, contrary to plaintiffs' assertion to the contrary, was not a business record. The 2006 memo was hearsay as it was used to establish the truth of the matter asserted— the lack of a proper system of accounting. (Evid. Code, § 1200, subd. (a).) And plaintiffs have failed to identify any testimony laying the foundation for its admission as a business record pursuant to Evidence Code section 1271. Per that code section, "[e]vidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: (a) The writing was made in the regular course of a business; (b) The writing was made at

16.

or near the time of the act, condition, or event; (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness." (Evid. Code, § 1271.) Plaintiffs have not cited to or proffered any evidence at all in their separate statement, opposition papers below, or appellate briefing that could satisfy any of Evidence Code section 1271's four requisite elements. Thus, we affirm the lower court's ruling to exclude the 2006 memo.

We turn now to the testimony of Calcot's chief financial officer. Plaintiffs point to particular testimony of the chief financial officer in an effort to prove Calcot cannot account for cotton sale proceeds by pool, by bale, or by grower. However, plaintiffs cite to no admissible facts or relevant authority as to how Calcot was obligated to account in such a manner, nor how the lack of such a manner of accounting would be a material fact the knowledge of which would have caused plaintiffs to terminate their Calcot membership.

Even were the injuries plaintiffs allegedly suffered under the breach of contract theories they advance here on appeal direct, the relevant undisputed facts show these theories cannot succeed.

### 3. Breach of fiduciary duty cause of action

"The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820—821.) In their briefing, plaintiffs contend Calcot owed plaintiffs the fiduciary duty that an agent owes to his or her principal. According to plaintiffs, among the fiduciary duties Calcot owed directly to plaintiffs was the duty "not to conceal material information" from them. Specifically, plaintiffs contend Calcot breached its fiduciary duty to plaintiffs by "conceal[ing] that it did not inten[d] to account for the proceeds from the sale of cotton delivered by growers, nor did it intend to account for expenses in handling cotton delivered by growers, as understood and agreed

17.

in paragraph 6 and 7 of the MMA and as required by law." [5]  Further, plaintiffs assert Calcot concealed accounting deficiencies, that it had no pool accounting, and that the board did not specifically approve the losses.  Finally, plaintiffs argue Calcot disproportionately distributed losses to plaintiffs and/or made unlawful deductions.  We address each of these purported breaches of fiduciary duty in turn, except for the contentions we addressed in footnote 3.

To support the assertion Calcot concealed accounting deficiencies, plaintiffs cite to the 2006 memo itself, as well as to testimony from various persons regarding Calcot's purported efforts to conceal the deficiencies discussed therein.  However, as we have already discussed, the trial court properly excluded the 2006 memo, and since the memo is the only foundation on which plaintiffs' assertion regarding concealment of accounting deficiencies lies, the assertion is thus unsupported by any evidence.

Plaintiffs next assert Calcot had no pool accounting.  Also, as we have already mentioned, plaintiffs point to no evidence or authority regarding any duty to account by pool.  Such being the case, this basis for claiming a breach of contract also fails.  Similarly, regarding plaintiffs' assertion Calcot's board "did not specifically approve the losses," plaintiffs cite to a statement in their statement of undisputed material facts filed in support of their opposition papers that states:  "CEO Neeper made the decision behind the deductions in 2010 or 2011 and the Board did not approve it prior to the deduction and was not provided a reasonable basis to assess it such as the math."  This statement of fact then cites to two pages of Jarral Neeper's deposition testimony, which contains no statements whatsoever regarding board approval of any losses or deductions.

---

[5] In support of these alleged facts that Calcot did not intend to account for the proceeds or expenses, plaintiffs cite to the deposition testimony of John F. Prentice.  However, as part of the summary judgment proceedings, the trial court sustained Calcot's objection to Mr. Prentice's deposition testimony on the ground it lacked foundation and was speculative.  We question why plaintiffs then cite to this evidence, and we note it is the only evidence cited in support of these assertions.

Furthermore, plaintiffs never specified what losses they are referring to. Regardless, their assertion regarding the absence of board approval of losses is unsupported by a citation to any evidence in the record.

Finally, with respect to their contention Calcot disproportionately distributed losses to plaintiffs and/or made unlawful deductions, plaintiffs more specifically claim that Calcot "severed losses from itself to its benefit and distributed the losses at the expense of Plaintiffs unequally in the Call and Seasonal Pools." Plaintiffs did not specify what losses they are referring to. However, plaintiffs' citations to the record in support of this assertion provide some further context.

Plaintiffs cited to the deposition testimony of Calcot's CEO and chief financial officer, which provides that Calcot could have chosen to charge the $21 million in losses to retained earnings or to operating expenses; Calcot chose to charge them to operating expenses because charging them to retained earnings would have caused Calcot to violate certain banking covenants requiring Calcot to maintain a minimum tangible net worth in order to have continued access to their banking lines of credit. The cited deposition testimony further explained the loss experienced by the call pool was not the same amount per pound as experienced by the seasonal pool because "the amount [Calcot] could take from the call pool was limited to what [Calcot] had advanced [to the call pool members] and what [Calcot] actually achieved for the basis. So there was a limit to how much [the call pool members'] amount would be."

This deposition testimony does not establish a breach of fiduciary duty when considered in light of section 11.03 of the bylaws, which provides Calcot's board may, in the event of a "substantial loss," charge all or any part of such loss to current operating expenses. Plaintiffs themselves characterize the $21 million in losses as "substantial" in their appellate briefing. Additionally, the paltry evidence plaintiffs cite to regarding the difference in losses per pound of cotton experienced by the seasonal and call pools does not establish a breach of fiduciary duty to members of either group. The evidence does

19.

not establish a breach of any rule, regulation, or contractual provision, and plaintiffs have not even asserted, much less demonstrated, that the seasonal and call pool members should have experienced the same amount of loss per pound of their respective cotton.

Similar to both preceding causes of action, plaintiffs cannot advance a cause of action for breach of fiduciary duty on any of the theories they have presented to us, and thus we need not decide the derivative or direct nature of the purported cause of action.

### 4.     *Violation of Penal Code section 496 cause of action*

Finally, plaintiffs claim Calcot violated Penal Code section 496—which prohibits receipt of stolen property—because Calcot fraudulently obtained title to plaintiffs' cotton by false representations and false pretenses.  Independent of its decision that this claim is derivative, the trial court determined it fails on the merits because the property was not already stolen when Calcot acquired it.  The trial court incorrectly concluded that property must already have been stolen at the time the defendant acquired it in order to incur Penal Code section 496 liability.  However, we nevertheless affirm the trial court's grant of summary judgment as to this cause of action because the claim fails for lack of evidentiary support.

"Although Penal Code section 496 defines a criminal offense, it also provides an enhanced civil remedy in the event there has been a violation of the statute—that is, where a person has knowingly received, withheld or sold property that has been stolen or that has been obtained in any manner constituting theft.  (Pen. Code, § 496, subd. (a)[].)  The enhanced civil remedy authorized by the statute is that any party injured by the violation of section 496 may file an action for 'three times the amount of actual damages' sustained, and for costs of suit and reasonable attorney fees."  (*Switzer v. Wood* (2019) 35 Cal.App.5th 116, 119, italics omitted.)

Penal Code section 496, subdivision (a), states in part as follows:  "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained,

20.

or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained," may be punished by imprisonment. "Penal Code section 484, subdivision (a) describes the acts constituting theft to include theft by false pretense, which is the consensual but fraudulent acquisition of property from its owner." (*Bell v. Feibush* (2013) 212 Cal.App.4th 1041, 1049.) Penal Code section 496, subdivision (a) additionally provides: "*A principal in the actual theft of the property may be convicted pursuant to this section*. However, no person may be convicted both pursuant to this section and of the theft of the same property." (Emphasis added.)

The plain reading of the relevant parts of Penal Code sections 496 and 484 demonstrates that plaintiffs could maintain an action against Calcot for violation of Penal Code section 496 on the theory that Calcot fraudulently induced plaintiffs to give Calcot title to their cotton. Calcot cites to *Lacagnina v. Comprehend Systems, Inc.* (2018) 25 Cal.App.5th 955, wherein the Court of Appeal held that Penal Code section 496, subdivision (a)'s reference to " 'property that *has been stolen* or that *has been obtained* in any manner constituting theft' " means that the property in question must already have the character of having been stolen when it came into defendant's hands. (*Id.* at p. 971.) However, we believe this is an erroneous interpretation of the statute.

Notwithstanding that plaintiffs could hypothetically bring a claim for violation of Penal Code section 496 against Calcot, plaintiffs' appellate briefing does not specify any acts that they claim form the basis of their claim. All plaintiffs do is state: "The gravamen of Plaintiffs' claim under Penal Code section 496 is the same concealment and nondisclosure underlying the constructive fraud and breach of fiduciary duty claims." As we have already explained, the factual assertions underlying the theories of recovery plaintiffs advance for constructive fraud and breach of fiduciary duty in their opening brief lack evidentiary support. Since plaintiffs apparently base their theory of recovery

21.

on their sixth cause of action on these same unsupported factual assertions, the sixth cause of action likewise fails.

**B.      The claims are derivative**

As a separate basis for affirming the judgment, we conclude the trial court correctly concluded all of plaintiffs' claim are derivative because they all stem from a claim of corporate mismanagement that harmed Calcot first.  (*Schuster, supra,* 127 Cal.App.4th at p. 312.)  In other words, the court correctly ascertained the gravamen of the complaint as being injury to Calcot.  (*Jones, supra,* 1 Cal.3d at pp. 106–107 [action is derivative if gravamen of complaint is injury to corporation].)  Any alleged injury the plaintiffs suffered was incidental to the harm that first befell the corporation.  (*Ibid.*)

As the trial court observed, plaintiffs alleged in their complaint that the actions of Calcot in entering into the White Gold and GCR business ventures were not authorized either by law or by Calcot's board of directors.  These acts of corporate mismanagement allegedly resulted in reduced corporate assets and increased operating expenses—injuries that were to Calcot generally.  Each member of Calcot would surely suffer injury because a reduction in corporate assets means a reduction in available overages that can be paid out to members.  However, this injury to members is incidental to the injury that first befell Calcot as a whole.  The members' injuries are not independent of the injury to the whole of Calcot.

That Calcot's directors elected to remedy the reduction in corporate assets by increasing operating expenses instead of taking from retained earnings has no effect on the characterization of the members' injuries as derivative, for even if Calcot's directors had elected to take from retained earnings, the crucial fact would obviously remain that Calcot has been injured by acts of corporate mismanagement, and the members would still suffer injury by Calcot being in a less financially healthy position.

Specifically, none of plaintiffs' contract-, duty-, or fraud-based claims are direct.  Plaintiffs argue they each possess a direct breach of contract action because each signed

22.

their own MMA with Calcot and only each member can assert their individual rights under their respective MMAs against Calcot. However, breach of contract claims are derivative if the injury alleged as a result of the corporation's breach of a contract it has with a shareholder is directly to the corporation. (*Mielui, supra,* 2001 WL 777091 at *16.) Plaintiffs allege Calcot breached the MMA by taking deductions beyond those allowed by paragraph 6 of the MMA and failing to account for such deductions. But as Calcot correctly states, any injury related to how it allocated losses and accounted to members was a down-stream injury stemming from Calcot's directors' alleged acts of corporate mismanagement, and thus the breach of contract claims here are derivative.

Similar logic applies to the duty-based claims. Plaintiffs contend Calcot owed a fiduciary duty directly to its members to not conceal material information that could affect their rights and interests as members, as well as a duty to not disproportionately distribute losses to members or make unlawful deductions. They maintain this duty is categorically separate from the duties Calcot's officers and directors owed to the cooperative generally. As with their contract claims, plaintiffs contend only they as individuals could assert these claims against Calcot. However, even in a fiduciary duty action, individual shareholders (or members) can maintain a direct suit only if their injuries are "not incidental to an injury to the corporation." (See *Jones, supra,* 1 Cal.3d at p. 107; see *PacLink, supra,* 90 Cal.App.4th at p. 964.) Although plaintiffs allege Calcot owed duties to them directly, plaintiffs' duty-based claims allege an injury that is down-stream from the injury caused by corporate mismanagement.

The same reasoning applies to Plaintiffs' fraud-based claims, including their Penal Code section 496 claim. Plaintiffs aver Calcot did not disclose it was engaged in "commodities speculation" that risked Calcot liquidity and concealed it did not have in place an accounting system that comported with generally accepted accounting principles. Plaintiffs allege they would have ceased delivering their cotton to Calcot and withdrawn from the cooperative had they known this information. The Fifth Circuit

23.

Court of Appeals in *Smith v. Waste Management, Inc.* (5th Cir. 2005) 407 F.3d 381 was faced with the question of whether a shareholder's suit based on misrepresentations by corporate management was direct or derivative. (*Id.* at pp. 385—386.) In concluding the suit was derivative, the court employed a rule formulated by the Texas Court of Appeals which provided that "the most relevant question [in determining the nature of a shareholder claim based on misrepresentation] is whether the stockholder can prevail without showing … a corresponding injury to the corporation." (*Id.* at p. 386, quoting *Shirvanian v. DeFrates* (Tex. App. 2004) 161 S.W.3d 102, 110.) The suit is derivative in nature when the alleged misrepresentations are "based on mismanagement of the corporation's assets." (*Ibid.*) Applying this rule here leads us to conclude the fraud-based claims are derivative because any alleged commodities speculation or other acts of corporate mismanagement and failure to maintain adequate accounting standards would have caused injury to Calcot as a whole first before harming the members. Plaintiffs cannot demonstrate they have suffered an injury from fraudulent activity that does not have a corresponding injury to Calcot generally.

Our conclusion that all of plaintiffs' claims are derivative should not be read to imply that as a general rule a shareholder suit is always derivative if it is the corporation (or the cooperative) that is injured first in time. Even if the corporation is injured first, shareholders may still have direct claims if they can identify harm they have suffered that is independent of, as opposed to incidental to, the harm that befell the corporation. Here, plaintiffs have not identified such independent harm.

## **DISPOSITION**

The judgment is affirmed.  Respondent shall recover its costs on appeal.

SNAUFFER, J.

WE CONCUR:


POOCHIGIAN, Acting P.J.


SMITH, J.

25.